# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60211
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2015

Lyle W. Cayce
Clerk

YVETTE TURNER,

> Plaintiff - Appellant

v.

JACKSON STATE UNIVERSITY,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-612

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Yvette Turner sued her former employer, Jackson State University, alleging, among other claims, retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3. She appeals the district court's grant of summary judgment in favor of Jackson State. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60211

I.

Construing the evidence in the light most favorable to the plaintiff, the record supports the following facts. From 1999 until 2002, Turner was employed at Jackson State as an administrative assistant. In 2002, Turner filed a charge alleging sexual harassment under Title VII with the Equal Employment Opportunity Commission ("EEOC"). She then filed a lawsuit against Jackson State alleging sexual harassment, and the lawsuit was settled in 2006. As part of the settlement, Jackson State employed Turner as a tenure track assistant professor with probationary conditions. Her employment was to be governed by Jackson State's employment handbook and the policies and procedures of the Board of Trustees of Mississippi State Institutions of Higher Learning.

According to those policies, a tenure track assistant professor with probationary conditions must apply for tenure in his or her sixth year. Turner applied for tenure in November 2011. In March 2012, Mark Hardy, Jackson State's provost at the time, recommended that Turner be denied tenure, and Jackson State's president, Caroline Meyers, accepted that recommendation. Both parties sent Turner a letter informing her that she had been denied tenure, and Provost Hardy's letter specifically encouraged her to "meet with [her] department chair and college dean to explore alternative employment options with the University" and referred her to "the Faculty Handbook for specific procedures related to this recommendation." Turner then met with Provost Hardy who told her that she could remain at Jackson State in either a teaching track or clinical research track position.[1]

Following the denial of her tenure application, Turner appealed the decision and filed an internal grievance. In September 2012, Turner filed an

---

[1] Provost Hardy does not remember this conversation.

2

No. 15-60211

EEOC charge alleging various forms of retaliation, including not being properly advised about the requirements for tenure, in response to her earlier sexual harassment charge and lawsuit.[2] In the fall of 2012, Turner received an employment contract for one academic year in a non-tenure track position. Provost Hardy previously told his secretary that Turner's contract was for "one year only." Turner signed this agreement on October 30, 2012. Turner's contract expired in May 2013, and she was then terminated.

On August 5, 2013, Turner filed a final EEOC charge. This charge alleged that Turner was fired because of her previously filed EEOC charges, including those filed in 2002 and 2012. After receiving a right to sue letter, Turner filed a lawsuit on September 30, 2013 in the Southern District of Mississippi against Jackson State alleging retaliation and sex discrimination under Title VII, and additional claims under 42 U.S.C. §§ 1981 and 1982, the First and Fourteenth Amendments, and several state statutes. The district court dismissed all of the claims but Turner's Title VII retaliation claim. On March 9, 2015, the court granted summary judgment for Jackson State. Turner appeals only the grant of summary judgment.

II.

We review grants of summary judgment de novo, applying the same standard as the district court. *Martinez v. Texas Workforce Comm'n-Civil Rights Div.,* 775 F.3d 685, 687 (5th Cir. 2014), *cert. denied* 2015 WL 2473108 (U.S. Oct. 5, 2015) (No. 14-1415). At the summary judgment stage, we review the facts in the light most favorable to the non-moving party. *Id.* Summary judgment should be granted only when there is no genuine dispute of fact and

---

[2] Turner amended her 2012 EEOC charge in January 2013 to reflect ongoing retaliation in the form of not being compensated fairly.

the moving party is entitled to judgment as a matter of law. *Id.* (quoting Fed. R. Civ. P. 56(a)).

Title VII makes it unlawful for an employer to discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a claim of retaliation, a plaintiff must first establish a prima facie case by showing: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). The burden then shifts to the employer to provide a legitimate, nonretaliatory reason for the adverse employment action. *Id.* The plaintiff then must establish that the employer's reason was pretext for retaliation. *Id.* The Supreme Court recently held that a plaintiff alleging retaliation under Title VII must establish that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). Because Turner cannot meet her burden under this framework, her claim fails.

The district court held that Turner established a prima facie case of retaliation and that Jackson State provided a legitimate, nonretaliatory justification for her termination, but that Turner did not establish a genuine issue of fact as to pretext. Even if Turner can establish a prima facie case of retaliation, Jackson State provided a legitimate reason for her termination— her contract ended and was not extended because she did not meet the requirements set forth in the relevant employment policies. Turner contends

that this reason was pretext, and instead, she was terminated because she filed EEOC charges. We disagree.

Jackson State provided a legitimate business justification for Turner's termination. At this stage of the burden-shifting framework, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557 (citation omitted). Jackson State's policies, which governed Turner's probationary tenure track position, state:

> A faculty member who is not awarded tenure must have his/her tenure track contract terminated at the end of the seventh year of the probationary period, although he/she may apply for a non-tenure track position through the normal application process. The individual cannot be reappointed to a faculty position after not being awarded tenure without going through the application process.

These policies also state:

> Faculty members who are not awarded tenure during that time period must be given a one-year terminal contract at the end of their sixth year, which expires at the end of the seven-year period or placed in a non-tenure track position upon the recommendation of the department chair.

Jackson State's proffered nonretaliatory justification for Turner's termination was that she did not submit an application to extend her employment and that her department chair did not recommend her for tenure. The record supports Jackson State's justifications. Several Jackson State administrators explained the process for granting a non-tenure track position to a professor that has been denied tenure, including President Myers, who stated that granting a professor a non-tenure track position is rare and is only warranted based on need and expertise. Provost Hardy's letter specifically instructed Turner to review these policies, and Turner herself admitted that she never submitted an application. In addition, the Dean of the College of Education, Daniel

5

No. 15-60211

Watkins, stated in his deposition that Turner's department chair did not recommend her for such a position. Jackson State met its burden of production in offering a legitimate, nonretaliatory reason for Turner's termination. *See McCoy*, 492 F.3d at 557.

Turner argues that there is an issue of fact as to whether Jackson State's justification was pretext. "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy*, 492 F.3d at 562 (citation omitted). Turner must establish that she would not have been terminated but for her filing of EEOC charges. *See Nassar*, 133 S. Ct. at 2534. Turner argues that a reasonable juror could infer pretext and causation based on several assertions and different pieces of evidence: (1) Turner's department head at the time did not have any problems with Turner and was unaware that she needed to recommend Turner for further employment; (2) Dean Watkins said Turner would always have a job working at Jackson State while Watkins was dean; (3) Turner could receive a recommendation long after the contract was signed in October; (4) the temporal proximity between the date of her receipt of the contract and her last EEOC charge; (5) Turner's previous department head recommended her for tenure; and (6) there was no evidence of any other professor that Jackson State terminated because it did not have a recommendation.

Standing alone, these arguments are not sufficient to show pretext. Turner presented no evidence contradicting Jackson State's claims that it enforces policies that require a terminal employment contract following a denial of tenure and also require a recommendation from the department chair to extend the contract. In addition, Turner has not presented any evidence showing that her department chair recommended her for such a position.

No. 15-60211

Altogether, Turner did not present evidence from which a jury could infer that retaliation, instead of the failure to follow university policies, was Jackson State's reason for her termination. As a result, there is no genuine issue of material fact as to whether Turner's filing of EEOC charges was a but-for cause of her termination from Jackson State. *See Nassar*, 133 S. Ct. at 2534; *McCoy*, 492 F.3d at 562.

## III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Jackson State.